Lakamoee, Judge,
dissenting:
I respectfully dissent for the reason I believe plaintiff’s claim is barred by the 6-year statute of limitations, 28 U. S. C. •2501.
Plaintiff was separated from active service on June 9,1946. He did not apply to the Air Force Board for Correction of Military Eecords until 1953. We have many times held that his cause of action first accrued when he was released from active duty, and resort to the correction board would not toll the statute of limitations. Levadi v. United States, 137 C. Cls. 97; Barker v. United States, 135 C. Cls. 42; Rosnick v. United States, 132 C. Cls. 1; MacFarlane v. United States, 134 C. Cls. 755; Duff v. United States, 133 C. Cls. 161.
Plaintiff’s petition was filed June 29, 1954, more than six years thereafter.
FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner William E. Day, and the briefs and arguments of counsel, makes the following findings of fact:
1. The plaintiff enlisted as a flying cadet in the Air Service, Eegular Army, May 29, 1920. He was honorably discharged August 17, 1921, by reason of expiration of training.
He accepted an appointment as second lieutenant, Air Service, Organized Eeserve Corps, November 12, 1921, and was honorably discharged from his commission on April 21, 1925. He re-enlisted January 29, 1927, and was honorably discharged April 7, 1927. He was appointed major, Air Corps, Army of the United States, May 8,1942, accepted the same date, and entered on extended active duty May 11, *473 1942. He was relieved from active duty and reverted to inactive status on June 9, 1946, by reason of demobilization.
He bad tlie following periods of active service: Enlisted from May 29, 1920 to August 17, 1921, and from January 29,1927 to April 7,1927. Commissioned from July 29,1923 to August 12,1923; August 3 to August 17,1924; September 1, 1924 to November 30, 1924, and from May 11, 1942 to June 9,1946.
2. At the time the plaintiff entered upon active duty in 1942, he was in good health. On June 8, 1942, he was certified by a competent medical examiner at Bolling Field, D. C., as physically qualified for flying.
3. Although there is evidence that he had had some difficulty in hearing, due to a bombing attack in January 1943 at Algiers, Africa, it appears that by August 1943 it could not have been serious because a report of physical examination for flying dated August 24, 1943 (as a result of which he was found physically qualified for flying duty, class I, by a board of medical officers) shows that his hearing was. in all respects normal and further shows that he had denied any history of ear trouble.
4. In December 1943, the plaintiff, while at Bari, Italy, in connection with an aircraft ferrying mission, was subjected to a heavy bombing attack. His hearing was affected to the point where he could not hear. Upon reporting to the flight surgeon there, he was told that Ms hearing would probably return to normal in a few days. Apparently the hearing acuity in his left ear was reduced, but there is no evidence of any physical examination reflecting defective hearing until May 30, 1945, as shown in finding 6. In the meantime the plaintiff had performed flying duty in various theaters of operation. In January 1944 he left for China. Upon his arrival he was assigned at 14th Air Force Headquarters, later becoming base commander at an advance base in China. He received flying pay as a pilot during the time he was on duty in China from early January 1944 until February 1945.
5. While returning to the United States, by ship, from the duty referred to in the preceding finding, the plaintiff was thrown from a chair in wMch he was sitting, to the- *474 concrete deck, injuring his shoulder. Upon his arrival he went to the dispensary at Fort Hamilton, New York. X-rays were taken which were negative. He was sent home on leave for 45 days. While on leave, he came to Walter Need General Hospital at Washington, D. C., and was given physiotherapy treatments for his shoulder, as an out-patient, from May 15 until June 11,1945.
6. In the meantime he had had his ears examined at Bolling Field, D. C., and a loss in hearing acuity was found in both ears by tests given on May 30 and June 14,1945.
7. He was admitted as a patient at Walter Eeed General Hospital on June 15, 1945. His chief complaint then was “ache in right shoulder.” He remained at the hospital for treatment of bursitis until July 16, 1945, at which time he was returned to general duty with his condition on discharge noted as improved.
8. The plaintiff then reported to the port of embarkation at New York for return to duty in China. His orders were ■changed and he was sent to Fort Meade, Maryland. From there he was sent to Greensboro, North Carolina, and finally to Hondo, Texas, where as liaison officer he instructed Chinese pilots in the operation of B-24 bombers.
9. While at Hondo, Texas, he was admitted to the station hospital on November 8, 1945, on complaint of pain in his right shoulder. On November 14, 1945, he was transferred to the AAF Keg. & Conv. Hospital, San Antonio, Texas. His chief complaint then was stated to be:
Pain, right shoulder; ear ache and deafness; especially left ear; pain and stiffness, left knee, especially in cold damp weather when the pain is severe.
His history of present illness, dated November 16, 1945, as recorded by that hospital, reads as follows:
In January 1, 1943 in Algiers, Africa, where this officer was stationed and during a bombing raid by the Germans, a bomb exploded the concussion causing him to be thrown through the French Doors of the room, striking his right shoulder and forehead against the door of the room where he was billited [sic]. He received a slight laceration over his forehead and an injury to his right shoulder. His ears began to buzz at that time and he has continuously to the present time had difficulty *475 hearing and has the same buzzing sounds in his ears; (16 Nov. 1945). He remained on duty and received no treatment except a small amount of idoine [sic] on his forehead laceration. His shoulder did not give him so much trouble at that time, and he thought that he_ had had an “uneventful recovery” from the shoulder injury.
In October 1943 in Oran, Algeria (Africa), the officer started to get out of bed and when he stepped onto the floor he dislocated his left knee, three times on this occasion. He reported to the infirmary where he remained for about three days; (Infirm[ary] was located at LaSenia, AAF). His knee was bandaged with an elastic bandage and afterwards he was transferred to 7th Sta. Hosp., at Oran, Algiers. He was xrayed and received physiotherapy from 18 Oct. to 19 November 1943. He was returned to duty in November 1943.
In December 1943, in a bombing raid at Bari, Italy, the officers ears were reinjured by the concussion of the numerous bombs which fell upon the air raid shelter where he was staying at that time. He received no treatment for the ears, but he had more difficulty hearing now than after the first mentioned bombing which had seemed to cause the trouble in the ears.
In April 1945 on the Tanker, Pan-Maryland, while returning to the XT. S. from North Africa, while seated in the Captain’s cabin in a chair at about 9:30 P. M. and the sea was unusually rough, the officer lost his balance, falling from his chair to the concrete floor striking his right shoulder, re-injuring it. On 27 April 1945 the officer was admitted to the dispensary at Fort Hamilton, New York where he had xrays made of the shoulder. He went home on Temporary Duty and while there (three miles from Walter Eeed Hospital), he was treated as an out patient at the hospital. He received heat and electric treatments for the shoulder for about ten days which did not relieve the condition; also, xray treatment. This is the only treatment which the officer received at this place. On 15 June 1945 the officer entered the hospital as a patient. The above named treatments were continued during his hospital confinement. He returned to duty and started again for overseas duty but his orders were changed at Fort Totten, New York; he was retained on duty in XT. S.
On 8 November 1945 the officer’s shoulder, right pained so severely that he entered the station hospital at Hondo AAF where he was stationed. He had xrays made of the shoulder and left knee. He received no treatment *476 and on 14 Nov. 1945 be was transferred to AAFPDC Eeg. & Conv. Hospital for treatment, observation and/or disposition to return to proper station upon completion.
10. On November 28, 1945 tbe plaintiff was admitted to Walter Eeed General Hospital on transfer from the A AF Eeg. & Conv. Hospital on diagnosis involving his right shoulder. He was discharged from the hospital on March 25,1946. The clinical record brief, apparently prepared on the former date, is quoted in finding 11. Final diagnosis,, additional diagnoses, operations, change of status, as follows:
1. Tendonitis, moderate, supraspinatus tendon, right, secondary to injury received when thrown around in bombing raid in Algeria 1948. LOD yes. Cured.
2. Strain chronic, mild, knee, left accidentally incurred' while _ getting out of bed in October 1943 Oran, Algeria Improved.
3. Defective hearing, mixed type, moderate bilateral. Unimproved. AD [right ear] i/15 AS [left ear] 0/14.
11. The clinical abstract in connection with the plaintiff’s-hospitalization at Walter Eeed General Hospital, beginning November 28,1945, reads in pertinent part as follows:
* * $ $ $ Consultations: Eye, Ear, Nose and Throat examination on 8 December 1945 revealed a diagnosis of defective hearing, mixed type, moderate, bilateral; hearing-A. D. 4/15; audiometer 49% loss; A. S. 0/15, audiometer 72% loss. Ear, Nose and Throat Department recommended that this defective hearing was sufficient for retirement and also recommended that this man be sent to a hospital for hearing aid. Line of Duty: Tes was given.
Progress in the hospital: Patient was admitted to Walter Eeed General Hospital on 28 November 1945. At that time his complaints were related to the right-shoulder and to the left knee. A diagnosis of sub-deltoid bursitis, right, was made and the patient was treated with x-radiation, 1200 “r” to the shoulder. Since that time the shoulder has improved and the patient does not complain of pain now. He has no muscle atrophy and his condition may be considered greatly improved if not cured. However, the patient’shearing indicated by Eye, Ear, Nose and Throat con *477 sultation shows by audiometer a 49% loss in the right ear and a 72% loss of hearing in the left ear. Patient has copies of forms 63, Physical Examination, performed in 1942 and 1943, both of which indicate no defect in hearing, hence this loss of hearing is unquestionably Line of Duty: Yes. Eye, Ear, Nose and Throat service states that this defect is sufficient for retirement and recommends that the patient should be sent to Bordon General Hospital, Oklahoma, for hearing aid. However, the patient states that he will purchase a hearing aid on his own initiative and Eye, Ear, Nose and Throat Section has agreed to this. Therefore, he will be brought before a Disposition Board with recommendation for retirement. The Air Corps Liaison Officer at Walter Need General Hospital concurs in the disposition.
12. On February 27, 1946, plaintiff met a Disposition Board at Walter Reed General Hospital which diagnosed his case as follows:
Defective hearing, mixed type, moderate, bilateral. Unimproved. LOD: Yes. Hearing: A. D. 4/15: A. S. 0/15.
The Board further found the plaintiff became incapacitated for military duty October 8, 1945, that the approximate date of origin of incapacity was January 1943, that the disability was incident to service, was total and permanent, and that plaintiff was unfit for service. The Board recommended that plaintiff be ordered to appear before an Army Retiring Board. This board was composed of two colonels and a captain, all Medical Corps officers. Action by the board was approved by the commanding officer of the hospital.
13. The plaintiff appeared before an Army Retiring Board, at Walter Reed General Hospital on March 22,1946. On this board of five were two medical officers with the rank of colonel. The plaintiff stated that he did not desire counsel. He testified concerning his defective hearing. In his testimony he was asked and answered questions as follows:
Q. Do you desire to be relieved from active duty? Give reasons for your answer.
*478 A. Yes. I have employment and it is necessary that I get immediate release from the Army.
Q. If the Board finds that you are not qualified for general service do you desire to remain on active duty in a limited service status ?
A. I do not.
Captain Joseph A. Buchignani of the Medical Corps testified as a medical witness. He read to the board the results of his examination of the plaintiff, stating among other things that the plaintiff was disqualified for permanent limited service, that further treatment, hospitalization or convalescene in a hospital or medical facility was not indicated, and that his audiometric loss was in the conversational range. In answer to the question “What are the defects in his ear that prevent him from hearing?”, he replied:
That is something that has not been completely determined. During this war there have been a great many cases of this type, and none, as yet, have been able to give a definite reason why. A sudden concussion causes this loss of hearing. In some of these cases they regain their hearing within 30 or 60 days, but in those cases where they do not recover after 60 days, they do not regain their hearing — according to my knowledge, experience and records that I have examined, ever get back their full hearing again.
The captain was asked the following question:
Can you state that the defective hearing is permanent, or not ?
The captain replied:
From my experience I would say that it is permanent.
The only other medical witness, Captain Irving B. Brick of the Medical Corps, testified that he was in full agreement with the testimony of Captain Buchignani.
14. The Army Retiring Board, on March 22, 1946, made the following findings:
The Board is unable at this time to determine the permanency of Major Suter’s incapacity, and the Board recommends 6 months’ temporary limited service, with re-examination and revaluation at the end of that time, at a hospital specializing in deafness.
*479 There is no evidence in the record as to approval of the action of the Army Eetiring Board by either the Commanding General, Army Air Force, the Surgeon General, the Adjutant General, or the Secretary of War.
15. The Walter Eeed General Hospital records show that the plaintiff was placed on limited duty on March 25, 1946. Special Orders No. 82, dated March 23, 1946, relieved the plaintiff from further observation and treatment at Walter Eeed General Hospital, and transferred him to the Separation Center at Fort Meade, Maryland, to arrive on March 25, 1946, for separation, not by reason of disability.
16. On March 26,1946, by Paragraph 115, Special Orders 85, Third Service Command, Fort George G. Meade, the plaintiff was relieved from active duty, not for physical disability.
17. Thereafter, plaintiff undertook civilian employment with a commercial airline, acting as its director for the Algeria area, North Africa, until February 1947. In November 1947 he went to France and established himself in the rare book business.
18. In the meantime, plaintiff bore in mind the fact that the Army Eetiring Board at Walter Eeed General Hospital had recommended a re-examination and re-evaluation of plaintiff’s hearing at the end of six months. While that recommendation was further conditioned upon (1) plaintiff’s remaining on active duty, in a limited service status, and (2) re-examination “at a hospital specializing in deafness,” plaintiff nevertheless, as a civilian pursuing private employment overseas, undertook to make his own arrangements looking toward further consideration of his case. Through a rather complicated series of arrangements he requested and received orders from Headquarters, Western Base Section, U. S. Forces, European Theater, dated December 19,1946 reading as follows:
The following officer is placed on temporary duty to the medical section, headquarters, Frankfort, Germany for a period of approximately five days effective December 19 for the purpose of reporting to the Surgeon General, ÜSFET. * * *
Major Thomas L. Suter 0100481 AC (AEC).
*480 Plaintiff thereafter reported to a U. S. Army Hospital in Frankfurt, Germany, where he was admitted December 20, 1946 with diagnosis “No disease. Admitted for final type physical examination”. He was discharged on December 28,1946. There is no record of the result of a physical examination of plaintiff at the Frankfurt hospital, although the plaintiff had requested that the report of examination be forwarded to Walter Feed General Hospital.
19. From November 1947 to January 1948, the plaintiff was engaged in France in his own business as a dealer in rare books.
20. In January 1948 plaintiff returned to the United States and sought admission to Walter Feed General Hospital, where he was admitted and examined, upon his chief complaint of deafness. On January 29,1948, a staff conference recommended “a full aural rehabilitation program.”
21. Under “history of hearing loss” taken by a medical officer at Walter Feed General Hospital on January 22,1948, after a full recitation of the events in plaintiff’s service affecting his hearing, there occurs the following:
He met an Army Fetiring Board at Walter Feed General Hospital on 22 March 1946 at which time the board recommended 6 months temporary limited duty with re-evaluation for his deafness at the end of that time. He elected to revert to a civilian status and was readmitted to Walter Feed General Hospital as a civilian on 22 January 1948.
22. The final summary in his clinical record carried the following notation under date of April 21, 1948:
This patient was given leave prior to taking aural rehabilitation or being issued a hearing aid. He was to return to the Aural Eehabilitation Center 1 April 1948, but so far he has not shown up. Information from his wife indicates he probably has returned to Paris, France. The patient is being discharged under authority of paragraph 7, Walter Feed General Hospital Fegula-tions 30-55, dated 10 February, 1948.
Plaintiff had been released upon his request about March 8,1948, so that he could return to France.
23. On April 15, 1948, plaintiff filed an application for compensation with the Veterans Administration in Paris, *481 France. On December 10, 1948, be was examined by Veterans Administration at the American Hospital of Paris, upon his complaint' of hearing difficulty, and inability to raise his right arm above the horizontal because of pain in shoulder.
24. As a result of the above examination, plaintiff while in France received a letter from Veterans Administration, dated March 17, 1949, stating in part as follows:
Your claim has been considered upon all the evidence of record including the report of the physical examination given December 10, 1948, and it was shown that your disability as the result of loss of hearing was service connected and disabling to a 40 percent degree from the date of your claim, April 15, 1948, and that your disability as the result of an injury to your right shoulder was service connected and disabling to a 10 percent degree from the same date.
25. In May of 1949, plaintiff visited the United States and apparently tried to enter Walter Need General Hospital again. He was directed to the Air Force, which department, by letter dated May 16, 1949, subject: Authorization for Hospitalization, notified plaintiff as follows:
1. Reference is made to your recent request for appearance before an Air Force Retiring Board to determine your eligibility for retirement pay benefits.
2. In view of the circumstances in your case, it has been determined that you should be given an opportunity to enter Walter Reed General Hospital, Washington, D. C. for physical evaluation, and appearance before a retiring board, if warranted.
3. You are authorized to report by wire or letter to the Commanding General, Walter Reed General Hospital, within ten days from the date of receipt of this letter, for the purpose of making the necessary arrangements for admittance to that hospital. Action has been initiated to furnish the hospital with all pertinent medical records on file in this Headquarters. Inasmuch as the hospital commander will not grant you admittance to the hospital until such time as the pertinent records have been assembled, it is suggested that you advise him at an early date of the location of all previous hospitalizations in Army hospitals, if any, so as to facilitate the procurement of all clinical and other medical records.
4. This authorization will be at no expense to the *482 Government, in which case you will not be reimbursed for travel or any other expenses incurred. There will be a subsistence charge during hospitalization, which at most installations does not exceed $1.4(1 per day.
5. In the event you do not desire to avail yourself of this authorization, you should promptly notify this Headquarters, USAF, Director of Military Personnel, Attention: Promotions and Separations Division, Washington 25, D. C.
BY ORDER OF THE SECRETARY OF TECS AIR FORCE:
Plaintiff replied to the above by letter of May 26, 1949, from Hillsboro, Virginia as follows:
Subject: Authorization for Hospitalization.
To: Commanding General, Walter Reed General Hospital.
1. As directed in the 3rd paragraph of the letter dated 16 May, 1949 from the Department of the Air Force, I am reporting myself available to enter Walter Reed General Hospital for a physical examination, evaluation and reappearance before an Air Force Retirement Board, as directed by the findings of an Army Retiring Board dated 22 March, 1946.
2. The hospitalization and the discovery of a physical disability for which I was ordered before an Army Retirement Board was entirely at the Walter Reed General Hospital. The sole exception was the hospitalization I received at the 7th Station Hospital, Oran, French North Africa for a dislocation of my left knee with the resulting complications and treatment in an Infirmary, Barie, [sic] Italy, for concussion due to enemy bombardment.
3. I am awaiting your pleasure and will be available until 30 June 1949 to comply with the directions contained in the letter of 16 May, 1949.
26. Plaintiff appears to have made no further visit to Walter Reed General Hospital, nor any attempt to enter that hospital at this time, nor did he receive further orders. In the early fall of 1949 he returned to Europe to attend to his affairs there.
In October 1949, after plaintiff had returned to France, he wrote the Air Force Headquarters advising that it had been “impractical” for him to remain longer in the United States. Plaintiff, while making his expenses on these trips, nevertheless believed he was losing valuable business in his *483 absence. The rare book business appears to have been a highly competitive field of endeavor.
27. In 1951 plaintiff returned to the United States. By letter of April 23, 1951, addressed to him at a Washington, D. C. address, plaintiff was notified by Walter Eeed General Hospital as follows:
Subject : Authorization for Hospitalization To: Major Thomas L. Suter 27 H Street, N. W. Washington, D. C.
1. Arrangements have been made for your admittance to the hospital for observation and necessary treatment, including appearance before a medical board and, if warranted, a Physical Evaluation Board. Your records are now in this office.
2. Kindly notify this office at least 72 hours prior to the date of your admission.
FOR THE COMMANDING GENERAL :
28. Over two months elapsed before plaintiff, on June 28, 1951, reported to Walter Eeed General Plospital, where he was informed that the law then in effect would not permit consideration of his retirement for physical disability.
29. Plaintiff sometime in 1953 applied to the Air Force Board for Correction of Military Eecords to correct his record to show retirement on account of physical disability as of March 27, 1946.
30. On or about December 11, 1953, the Surgeon General, USAF, addressed the following memorandum opinion to the Air Force Board for Correction of Military Eecords:
1. At the time Major Suter was relieved from Active Duty ho met a retiring board. The records of this Board show that it was cognizant of and evaluated all of the defects which are subsequently shown to have been present. The patient’s complaints were numerous, and referable to:
a. Deafness.
b. Eesiduals of injury (bruise) to left shoulder.
c. Injury to left knee, not taken up by the Board, subsequently rated zero precent [sic] by the Veterans Administration.
2. The Board was unable to reach a conclusion and recommended further trial at duty and a re-evaluation. Since this re-evaluation was subsequently provided, but *484 was incomplete because of Major Suter’s other personal requirements, we are forced to utilize other evidence to determine whether, at the time of separation, Suter was or was not “permanently incapacitated for further military service.”
3. Major Suter’s statements show that subsequent to separation he made at least four transatlantic voyages and earned his living in Algiers and Paris. Based upon this it is presumed that he could have performed effective duty during this period, including overseas duty. The wearing of a hearing aid does not warrant a finding of unfitness for duty; on the contrary it rehabilitates the person for such service.
4. Therefore it is the opinion of the Surgeon General that Major Suter was not permanently physically incapacitated for military duty at the time he was separated. There is no error found in the separation processing. It is recommended that no change be made in the military records for medical reasons.
31. On January 28, 1954, the Secretary of the Air Force Board for Correction of Military Records addressed the following letter to plaintiff:
Reference is made to your request for correction of your military record, under the provision of Section 207 of the Legislative Reorganization Act of 1946, as amended by Public Law 220,82nd Congress.
The Administrative regulations and procedures established by the Secretary of the Air Force for the guidance of this Board provide that an application may be denied where a sufficient basis for review has not been established.
I regret to advise you that a careful consideration of your military record, together with such facts as have been presented by you, fail to establish a sufficient basis for a hearing of your case by this Board. Therefore, in the absence of additional material evidence, no further action on your application is contemplated.
A copy of this letter has been sent to your counsel, The Disabled American Veterans.
BY DIRECTION OP THE CHAIRMAN
32. In March 1952 plaintiff was again examined by the Veterans Administration. At this time his shoulder and knee injuries were diagnosed as “clinically recovered”, and his hearing as “nerve deafness, total, bilateral”. On this *485 basis that agency redetermined his percentage of disability at 100 percent and plaintiff is drawing the appropriate compensation therefor.
33. In the circumstances, and in view of the fact that no re-examination of the plaintiff’s condition since the Retiring Board’s tentative decision in 1946 was in the plaintiff’s record, the failure of the Air Force Board for Correction of Military Records to correct the plaintiff’s record was arbitrary. The record should have been corrected to show that the plaintiff was incapacitated for general military service on June 9, 1946, by reason of defective hearing in both ears, which incapacity was service-connected, total and permanent.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38 (c).
In accordance with the opinion of the court and on a memorandum report of the commissioner as to the amount due thereunder, it was ordered on February 12, 1958, that judgment for the plaintiff be entered for $14,877.57.